No. 91-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

THE STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

WILLIAM NELSON KOWALSKI,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Stephen J. Nardi, Sherlock & Nardi, Kalispell,
          Montana.

      For Respondent:

          Marc Racicot, Attorney General, Helena, Montana;
          Micheal S. Wellenstein, Assistant Attorney General,
          Helena, Montana;    Scott B. Spencer, County
          Attorney, Libby, Montana.

Submitted on briefs:  October 31, 1991

Decided:  March 5, 1992

FILED

Filed MAR 5 - 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred *3.* Weber delivered the Opinion of the Court.

Following jury trial in the Nineteenth Judicial District Court, Lincoln County, Montana, the defendant, William Kowalski (Kowalski) was convicted of two counts of felony incest in violation of § 45-5-507, MCA, for sexual contact with his daughters M.K. and C.K. Kowalski appeals. We affirm.

The determinative issues are restated as follows.

1. Did the court err in ruling that if Kowalski introduced letters M.K. had written, then it would allow the State to disclose circumstances surrounding the communication?

**2.** Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach C.K.'s testimony?

**3.** Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence on the issue of physical assault to impeach Bushfield's testimony?

In April 1989, C.K. moved from Missouri to Eureka, Montana to live with her father, William Kowalski, and her sister, M.K. M.K. and C.K. testified that after C.K. arrived, Kowalski would have the girls undress to their waist or place **his** hands under their clothing, and fondle their breasts. They further testified that Kowalski measured their breasts, recorded these measurements on a door frame in his bedroom, and commented on their shape and development. Additionally, Kowalski painted a star on C.K.'s naked breast, and attempted to cast a mold of his daughters' breasts with "plaster".

2

The girls related this conduct to their brother Benjamin who came to Eureka in November **1989** to stay with M.K. and C.K. while Kowalski was in Belgium. After listening to the victims, observing them, and seeing the measurements on Kowalski's door frame, Benjamin drove the victims to Missouri. There they reported Kowalski's conduct to Missouri officials.

On February 7, **1990,** the State of Montana charged Kowalski with incest for repeated sexual contact with his daughters M.K. and C.K. from June **1989** through November **1989.** M.K. and C.K. were **13** and 15 years old at the time. On July 11, **1990,** pursuant to a plea agreement, Kowalski pled guilty to felony assault. The District Court accepted this plea on the condition that Kowalski complete a sex offender examination. Kowalski failed to complete the sex offender examination, thus the court allowed him to withdraw his guilty plea, and the case proceeded to trial. At trial, Kowalski testified that he only measured the victims' bustlines while they were fully clothed. Further, he stated that he painted a star on C.K.'s breast as a joke, at the child's insistence. Finally, Kowalski argued that the girls fabricated the story of sexual touching in order to escape his physical and emotional abuse. Kowalski testified that due to post traumatic stress, he would often hit and yell at his children.

## I

Did the court err in ruling that if Kowalski introduced letters M.K. had written, then it would allow the State to disclose circumstances surrounding the communication?

M.K. testified at trial that she was afraid of Kowalski. In

3

cross-examination, Kowalski attempted to impeach M.K.'s claim of fear and undermine her credibility by introducing letters M.K. sent to Kowalski from Missouri. M.K. sent these letters after the defendant pled guilty to felony assault.

The court ruled that if Kowalski introduced these letters, he would open the door for the State to explore circumstances surrounding the communication. At the time M.K. wrote to Kowalski she was in Missouri and he was in Montana. He had pled guilty to felony assault based on his sexual contact with the victims and was awaiting sentencing. Thus Kowalski posed no threat to M.K. or C.K. at the time his daughter wrote the letters. As a result of this ruling, Kowalski withdrew his request to introduce the letters.

Kowalski contends the court violated Rule **410,** M.R.Evid., by ruling that the introduction of M.K.'s letters required full disclosure of the facts underlying Kowalski's prior plea. Under Rule **410,** evidence of guilty pleas, later withdrawn, and statements made during pleading are inadmissable in criminal trials except for impeachment purposes. Kowalski relies on State v. Hanson **(1981), 194** Mont. **197, 204, 633** P.2d **1202,** 1207, where this Court citing Commission Comments stated:

> [Rule **410]** allows an accused to offer to plead guilty...or to withdraw such plea without either action being used against him in any subsequent trial. This is intended . . . to allow highly prejudicial evidence to be excluded under considerations that the reasons for offering to plead or withdrawing pleas of guilty...would not be understood by a jury and would almost preclude a fair trial.

Kowalski contends the court's ruling denied him a fair trial by forcing him to choose between effectively cross-examining M.K. and

**4**

exposing the jury to highly prejudicial statements made during pleading.

The State contends that the trial court's ruling was proper. In United States v. Martinez (2nd Cir. 1985), 775 F.2d 31, 37, the court allowed the prosecution to introduce prejudicial evidence to rehabilitate the credibility of a witness during re-direct. The court held:

> . . . [I]t is well settled that a cross-examination attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness. Evidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination "for the purpose of rebutting the false impression which resulted from . . . cross examination." [Citations omitted.]

We agree with the State and conclude that allowing evidence of guilty pleas under the Martinez analysis is consistent with Rule 410. Here, Kowalski intended to introduce the letters to impeach M.K. and attack her credibility. Had the court suppressed the circumstances surrounding the letters while allowing Kowalski to use the letters to impeach M.K., it would have misled the jury. We conclude the court properly ruled that if the letters were introduced, a full disclosure of the circumstances surrounding Kowalski's guilty plea was necessary for the jury's proper evaluation of the evidence.

We hold that the court correctly determined that if Kowalski impeached M.K. with letters she mailed to Kowalski, then the State could disclose the circumstances surrounding the guilty plea.

## II

Did the court abuse its discretion by prohibiting Kowalski

5

from using extrinsic evidence on the issue of physical assault to impeach C.K.'s testimony?

At trial, C.K. testified that she was afraid of Kowalski, but he never struck her. Further, C.K. denied telling anyone that Kowalski had struck her. Subsequently, Sarah Bushfield, a friend of C.K., and Detective Vessel, of the Jefferson County, Missouri Sheriff's Department, both offered opinion testimony that C.K. was truthful, without objection on the part of the defendant.

On cross-examination, Bushfield was asked whether C.K. said that Kowalski had struck her. Bushfield responded "no." At that point, Kowalski attempted to attack C.K.'s credibility with a prior out of court statement Bushfield made to officers during the investigation. Bushfield previously told officers that Kowalski had struck C.K. in the ribs. The State objected to Kowalski using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.

Later, during cross-examination of Detective Vessel, Kowalski once again attempted to impeach C.K. on the issue of physical abuse. Vessel was asked whether C.K. admitted being "hit" by Kowalski. The State again objected to Kowalski's using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.

The court sustained both objections. It ruled that the issue of Kowalski's physical abuse of the children was collateral to the issue of sexual abuse. Thus, Kowalski was improperly impeaching C.K. on a collateral issue. In each instance Kowalski submitted an offer of proof.

Admitting or refusing evidence lies within the sound

6

discretion of the trial judge.  State v. Rudolph (1989), 238 Mont. 135, 142, 777 P.2d 296, 301.  Thus, the rulings of the District Court will be upheld unless Kowalski proves the court abused its discretion by refusing the testimony.  Here we conclude the court did not abuse its discretion in excluding the contested testimony.

First, Kowalski contends the District Court should have admitted the extrinsic evidence to show C.K.'s bias and motive to fabricate the sexual assault.  Here, the record reflects that the jury had overwhelming evidence from which to conclude that Kowalski physically abused his children.  Kowalski testified that he slapped and yelled at the children.  M.K. stated she was afraid of her father, and that he had hit her and C.K.  Kowalski's son, Benjamin, testified Kowalski hit and yelled at M.K., C.K. and himself. Benjamin's wife Salina Echolt, testified Kowalski was violent with the children.  Finally, although C.K. testified that her father did not hit her, she did testify that she was afraid of him and that he hit M.K.

Given the amount of evidence indicating that Kowalski had previously "hit" C.K., her testimony to the contrary is of little consequence.  Clearly the jury had sufficient evidence to conclude that the girls had motive to fabricate the sexual fondling in order to escape the physical abuse.  Accordingly, the court did not abuse its discretion in refusing to admit this testimony to show C.K.'s bias and motive to fabricate.

Next, Kowalski contends that the testimony was properly admissable to attack C.K.'s credibility.  Here, under Rule 608(b), M.R.Evid., Kowalski is not allowed to introduce extrinsic evidence

7

of specific instance of C.K.'s conduct. Rule 608(b), M.R.Evid. states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examinations of the witness...

Under Rule 608(b), Kowalski could, at the court's discretion, introduce C.K.'s prior statements in the course of cross-examination of C.K. in order to attack her credibility. Here, Kowalski chose to introduce these statements through other witnesses instead of during his cross-examination of C.K. Thus, under Rule 608(b), the court did not abuse its discretion in excluding Kowalski's questioning of Bushfield and Vessel.

Next, Kowalski contends the court should have admitted the evidence under Rule 613(b), M.R.Evid., which allows extrinsic evidence of a witness's prior inconsistent statement. The State contends these statements regarding physical abuse were collateral to the charge of incest and the court correctly prohibited Kowalski from using extrinsic evidence of prior inconsistent statements to impeach C.K. on this collateral issue.

The State and the trial court improperly addressed the issue of collateral matters. As stated in Cooper v. Rosston (1988), 232 Mont. 186, 756 P.2d 1125, the rule limiting impeachment of witnesses on collateral matters was abolished in favor of a relevancy analysis under Rules 401 and 403, M.R.Evid. Citing Commission comments, Cooper stated:

> The Commission believes that the limitation of impeachment by Rule 401, defining relevant evidence as

8

> including impeaching evidence, and Rule **403,** allowing the court to exclude relevant evidence if its probative value is outweighed by prejudice, confusion, waste of time, will allow the same result to be reached through a more flexible means than currently used with the collateral matters rule. <u>Therefore, Section **93-401-25,** R.C.M. **1947**</u> [superseded], (to the extent that it is concerned with collateral matters) <u>and case law stating the collateral matters rule are abolished in favor of the relevancy approach.</u> (Emphasis supplied.)

<u>Cooper</u>, **232** Mont. at **191, 756** P.2d **1128.** While the District Court applied the collateral matters rule instead of using the relevancy analysis, it did not abuse its discretion in excluding this evidence under Rule 401, M.R.Evid.

Rule **401,** M.R.Evid., defines relevant evidence as evidence which tends to make the existence of any fact at issue more or less probable and may include evidence relating to a witness's credibility. Rule **403,** M.R.Evid., excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

In State v. Hammer **(1988), 233** Mont. **101, 759** P.2d **979,** this Court upheld the trial court's decision to exclude credibility evidence using Rules **401** and **403,** M.R.Evid. In that case, the defendant attempted to introduce evidence of an assault victim's prior traffic offenses and misdemeanor possession charges. The Court held that: "the evidence in question does not tend to make any fact at issue in this action more or less probable than that fact would be without the evidence." Rule **401,** M.R.Evid. <u>Hammer</u>, **233** Mont. at **111, 759** P.2d at **985.** While <u>Hammer</u> raised the issue of self-defense, the Court concluded this evidence failed to make the defendant's assault more or less probable. Further, evidence

9

of the victim's criminal conduct did not reflect on the truthfulness of his testimony regarding the assault. Thus, although the nature of the victim's prior crimes was not highly inflammatory, the probative value of the evidence did not exceed its prejudicial effect.

Similarly, in this case, we conclude that evidence of Kowalski striking C.K. fails to make it more or less probable that he had sexual contact with M.K. and C.K. Likewise, such evidence does not reflect on the credibility of C.K.'s testimony regarding the sexual contact. Thus we conclude the trial court did not abuse its discretion in excluding the evidence under a Rule 401, M.R.Evid., analysis.

In addition, while 16 years old at the time of trial, C.K. had a "borderline IQ" and functioned at around an 11 or 12 year old level. This is an additional factor which the court could properly consider in exercising its discretion.

We hold that the District Court did not abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach C.K.

III

Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach Bushfield's testimony?

Finally, Kowalski contends Bushfield's prior inconsistent statement regarding Kowalski striking C.K. in the ribs, was properly admissible to attack Bushfield's credibility. As with the previous issue, we point out that evidence of Kowalski's physical

10

abuse of C.K. does not make it more or less probable that he sexually abused the victims. Kowalski failed to prove the court abused its discretion in excluding the evidence. Thus, we hold the court did not abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of sexual assault to impeach Bushfield's testimony.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the opinion of the majority as to the first issue. I must respectfully dissent from that opinion on issue two, which relates to the important question of evidence impeaching the credibility of an alleged incest victim. The majority's analysis is confused, at best, and legally flawed; the extent of the flaw is apparent even in the majority's statement of the issues, where the evidence at issue is characterized as "extrinsic evidence, on the issue of physical assault, . . ." In fact, the issue is whether "extrinsic evidence of prior inconsistent statements of a witness" is admissible under Rule 613(b), M.R.Evid. The majority opinion in this case will create unnecessary confusion and uncertainty for attorneys practicing on both sides of the minefield commonly called criminal law, as well as €or the district courts of this state.

This case involves two charges of felony incest against Kowalski for sexual conduct with his daughters M.K. and C.K. My disagreement with the majority is only as to the evidence relating to the charge of incest with daughter C.K. As is not uncommon in sex offense cases of all types, this case boils down to the credibility of the victim and the credibility of the defendant. The importance of the credibility issue is clear from the fact that the State put on several witnesses to opine, without objection, as to C.K.'s truthfulness.

During her testimony, C.K. denied that her father had ever struck her. She also denied ever telling anyone that he had done so. The defense then sought to impeach C.K.'s credibility by

**12**

inquiring of the State witnesses who testified as to C.K.'s truthfulness regarding certain statements C.K. made to them stating that her father had struck her, statements clearly and unequivocally inconsistent with her testimony at trial. As the majority notes, the State objected to Kowalski using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.

The court sustained the State's objections, ruling that the physical abuse issue was collateral to the issue of sexual abuse and, therefore, that the impeachment was improper. The majority affirms the District Court on other grounds, purportedly rejecting the "collateral matters rule" and premising its affirmance on Rule 401, M.R.Evid. It is my view that the majority herein did not altogether succeed in divorcing itself from the collateral matters analysis. As a result, the majority never addresses the dispositive issue, whether the statements were Rule 613 prior inconsistent statements admissible for impeachment of C.K. Furthermore, the majority concludes that the evidence was properly excludible under an erroneous Rule 401 relevancy analysis, relying on an entirely inapposite case. The flaws in the majority approach are addressed separately below.

The majority first raises Kowalski's contention that the "extrinsic evidence" relating to physical abuse was admissible to show C.K.'s bias and motive to fabricate the sexual assault. This argument not having been made at the trial, it simply should not be considered by this Court on appeal: the majority should have so stated and moved on. However, rather than take that clear, direct

13

and correct approach to the issue, the majority sets off at some length to insert the question of physical abuse into its opinion. It then cavalierly concludes that C.K.'s testimony that her father did not strike her "is of little consequence." This is the first clear indication that the majority has totally missed the mark in this case: the "consequence" of any part of a victim's testimony is not for this Court to weigh, but for the jury to consider. Further, this case has to do with **credibility** and with impeachment evidence. It does not have to do with whether or not physical abuse occurred, but with the consistency and, as a result, the credibility of the statements of the victim C.K.

Next, the majority addresses Kowalski's argument that the testimony was admissible under Rule 608(b), M.R.Evid. since Kowalski concedes in his brief that the evidence was not admissible under Rule 608(b), this issue should not have been addressed.

The majority finally seems headed in the right direction when it raises Kowalski's contention that the evidence was admissible under Rule 613(b), M.R.Evid., which allows extrinsic evidence of a witness' prior inconsistent statement. Unfortunately, this is the **last** mention the majority makes of Rule 613(b); the Rule, and Kowalski's entire argument on prior inconsistent statements, are never again taken up by the majority. Concluding correctly that both the State and the trial court improperly addressed the issue of **"collateral** matters" and that the "collateral matters rule" has been abolished in favor of a relevancy approach, the Court proceeds to make a confusing and incorrect application of Rule 401,

14

M.R.Evid., and the <u>Hammer</u> case.  It never comes back to the Rule 613 argument, apparently unable to differentiate between the concepts of extrinsic evidence, collateral matters, and prior inconsistent statements.

An appropriate analysis under Rules **401** through **403** would conclude that the testimony at issue in this case was relevant and admissible.  As the majority notes, relevant evidence "may include evidence bearing upon the credibility of a witness. . . ."  Rule **401,** M.R.Evid.  Indeed, in a trial of the type before us, credibility is often the crucial determination to be made by the jury.  It is quintessentially clear to me that the testimony at issue, relating to statements the victim made to the very witnesses who supported her truthfulness, and directly at odds with testimony she gave at trial, is relevant.  Therefore, the evidence is admissible pursuant to Rule **402,** M.R.Evid.

Rule **403** cautions, of course, that even relevant evidence may be excluded if its probative value is outweighed by one of the considerations mentioned in the Rule.  None of those considerations is present here and, to its credit, the majority does not suggest otherwise.  In any event, given the overwhelming importance of credibility in this case and, therefore, of other statements made by the victim which conflicted with her trial testimony, it is beyond me how the probative value could seriously be suggested to be outweighed.  I conclude that the evidence was relevant and admissible under Rules **401** through **403,** M.R.Evid.

Further, the majority's reliance on <u>Hammer</u> to buttress its

relevancy analysis is misplaced. In <u>Hammer</u>, the excluded evidence was of an assault victim's prior traffic and misdemeanor offenses: it was offered both to impeach the victim's credibility and, in conjunction with a self-defense theory, to show the victim's violent tendencies. We held in <u>Hammer</u>, and rightly so, that the evidence was not relevant for either purpose: it did not reflect on the truthfulness of the witness and did not relate in any way to the probability of the assault against the victim having taken place. For reasons unclear to me, the Court went on in <u>Hammer</u> to reference Rule 403's balancing test and conclude that the prejudicial effect of the evidence outweighed any probative value.

If the case before us were of the <u>Hammer</u> variety, I would agree with the majority's analysis. The evidence at issue here, however, is not even superficially related to the type properly excluded in <u>Hammer</u>. Here we are faced with **statements** made by the victim which directly **conflict** with her **testimony** at trial.

The majority completes its analysis of the issue by re-evidencing its inability to divorce itself from the "collateral matters" theory or to focus on the question of inconsistent statements by concluding that evidence of Kowalski striking C.K. "fails to make it more or less probable that he had sexual contact with . . . C.K." The evidence was **not** offered to prove that the physical contact occurred: that was not the "fact at issue" under Rule 401, M.R.Evid. The evidence was offered to impeach the credibility of the victim, as specifically authorized by Rule 401.

Under Rule 613(b), M.R.Evid., extrinsic evidence of a prior

16

inconsistent statement of a witness is admissible if certain procedural safeguards are met. It is clear to me that the evidence Kowalski attempted to introduce was, indeed, extrinsic evidence of prior inconsistent statements by C.K. to the State's two witnesses. The statements to them that her father had struck her were undeniably inconsistent with her sworn testimony at trial that he had never struck her: they were also inconsistent with her testimony denying that she ever told anyone that he hit her. As such, they constituted evidence going directly to C.K.'s overall truthfulness. The evidence was **"extrinsic"** in that Kowalski wanted to introduce it through the witnesses to whom the inconsistent statements had been made, rather than through the victim herself. The Rule specifically allows for extrinsic evidence; the statements were both "prior" in time to the testimony given at trial by the victim and "inconsistent" with that testimony. I would hold that the evidence was admissible under Rule 613(b), reverse and remand.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing concurring and dissenting opinion of Justice Karla M. Gray.

_____
Justice

17