No. 90-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

LEON LLOYD WHITCHER,

    Defendant and Appellant.

**FILED**

APR 29 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Arthur J. Thompson, Thompson & Sessions, Billings,
        Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General; Joseph E.
        Thaggard, Assistant Attorney General, Helena,
        Montana

        Dennis Paxinos, Yellowstone County Attorney; Charles
        Bradley, Deputy County Attorney, Billings, Montana


Submitted on Briefs: March 28, 1991

Decided: April 29, 1991

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, Leon Lloyd Whitcher, was convicted of sexual intercourse without consent by jury trial in the District Court of the Thirteenth Judicial District, Yellowstone County. He appeals. We affirm.

The sole issue on appeal is whether the evidence is sufficient to support the jury's verdict of guilty.

On Friday, April 14, 1989, fourteen-year-old N.H. agreed with a friend, Angie, age thirteen, to go to a party that night which had been primarily arranged between Angie and Adam, age seventeen. At approximately 11:50 p.m., N.H. and Angie met with four male individuals at the Huntley Bridge near Shepherd, Montana. These individuals were Adam, Shannon (age fifteen), Wes Plum (age twenty-two) and the defendant (age thirty). N.H. did not know the defendant, although she recognized him as the owner of the local video store.

The group entered the defendant's car and went to a nearby bar to purchase some liquor. The defendant then drove the group to an abandoned house which he owned outside Shepherd. The group arrived at the house around midnight.

A pentagram, a satanic symbol in the form of a five-sided star inside of a circle with an eye in the center of the star, was painted on the floor of a large room in the house. Adjacent to this room, and connected by a doorway, was a smaller room. A closet was located between the two rooms. Upon entering the closet from the room containing the pentagram, one could look into the

2

smaller room through a large hole in the common wall between the closet and the smaller room.

After entering the house, everyone sat down in the larger room and began drinking. At some point, Adam produced two books concerning witchcraft and began talking about satanism.

Approximately ten minutes later, the defendant instructed Angie to accompany him into the small room. The defendant left the door to the room open and Angie sat on a large pillow covered with a blanket. Angie remained in the room for approximately fifteen minutes, during which time the defendant asked her questions one would ask a person seeking initiation into a satanic cult. He asked her if she had ever belonged to a cult, if she was a virgin, if she was ashamed of her body, if she wanted power, and if she would obey a "high priest." Additionally, the defendant asked Angie if N.H. was a "shy or decent girl," if N.H. was "the same" as Angie, and if N.H. would "open up to him."

The defendant then instructed Angie to don a black robe, which she put on over her clothes. Shortly thereafter, Angie removed the robe and returned with the defendant to the other room. Angie then told N.H. to go into the small room with the defendant. The defendant told N.H. that he wanted to ask her some "routine questions."

At trial, the principal witnesses offered varying and sometimes conflicting accounts of the events which followed N.H's entry into the small room. N.H. testified that when she entered the room she had consumed only one drink of peach schnapps. She

3

further testified she drank another three swallows of the liquor during the one and one-half hours which she estimated she spent in the room with the defendant, but that she did not get drunk during that time. N.H. claimed that when they entered the room, the defendant closed the door and told her to sit on the pillow. With only a candle lighting the room, the defendant asked her questions similar to those he asked of Angie. The defendant then directed N.H. to don a black robe and turn herself in a movement which he said constituted the sign of a star. While she did so, the defendant told N.H. about a creature with a cat head and a human body which would act as her protector. When N.H. completed this movement, the defendant told her to remove all her clothing from beneath the robe. N.H. testified that she did as instructed because she was frightened.

The defendant then instructed N.H. to lie on her back, pull her legs up to her chest, and stare at a pentagram painted on the ceiling. He then engaged in sexual intercourse with her without removing his clothes. According to N.H., Adam knocked on the closet wall twice during the incident and asked what was taking so long. The defendant stopped when Adam knocked on the wall the second time. At that point, the defendant told Adam that he was "almost done with the questions." N.H. then started screaming for Angie.

Before Angie reached the room, the defendant told N.H. to sit up and quickly zipped his pants. The defendant told Angie upon her arrival that N.H. had consumed the entire bottle of schnapps and

was drunk.  He then left the room.  N.H. testified that she told Angie that "he hurt me" and that "Matt" had raped her.  N.H. testified that she could not remember the defendant's name at that time and mistakenly referred to him as "Matt."  After she dressed and regained her composure, N.H. returned to the larger room where, in anger, she proceeded to get drunk.

The defendant offered a different account of the events of that night.  He testified that he merely wished to chaperon Adam and Angie on their first date.  The defendant did admit that he had previously practiced satanism, but denied that he intended for the party to assume a satanic nature.  Although he admitted taking the two girls into the room and asking them questions related to initiation into satanic cults, the defendant claimed he did so to dispel their interest in the occult by scaring them.  He denied that he told N.H. to don the robe or remove her clothes.  He claimed that he left the room to use the bathroom; when he returned, N.H. had put on the robe.  The defendant claimed N.H. then began screaming that "Matt" had hurt her.  He denied that he ever engaged in sexual intercourse with N.H.

The other witnesses were not actually present in the small room during the incident but did offer testimony.  Angie testified that N.H. was "buzzed" but not drunk when she entered the small room.  She testified that N.H. and the defendant were in the small room for approximately thirty minutes, but later admitted she told a detective investigating the case that they were in the room perhaps an hour and fifteen minutes.  She also testified that she

5

could hear voices from the small room and there was never any silence. Angie testified that, after Adam knocked on the wall the second time, the defendant told her to come into the room because N.H. was hallucinating. When she entered the room, N.H. was naked except for the robe, was crying and was "massively drunk." Angie testified N.H. did not tell her the defendant raped her, but rather that someone named Matt and also her father had hurt her.

Wes Plum testified that N.H. and the defendant were in the small room for about fifteen or twenty minutes and that when N.H. went into the room she was "in between" intoxication and sobriety. According to Plum, N.H. "started freaking out" while still in the small room. He further admitted that he "probably" told a detective that shortly before she came out of the small room, N.H. had screamed that the defendant had raped her.

Adam testified that while N.H. and the defendant were in the small room, he went to the door of the room once and into the closet once and on one of these occasions he spoke with the defendant. Adam testified that he observed the defendant leave the small room and, on his return, he heard the defendant state that N.H. had removed her clothing and put on a black robe while he was out of the room. The defendant then told Angie to come into the small room and have N.H. put her clothes back on. Adam denied that he and the other males at the party belonged to a satanic coven or that defendant served as the high priest of that coven. When the prosecution presented a transcribed statement Adam had previously given to a detective in which he admitted the existence of such a

6

coven and the defendant's role in that coven, Adam denied making such statements to the detective. Adam did admit that the questions the defendant asked the two girls pertained to a "white [satanic] mass," which he described as an orgy.

On Monday, April 17, 1989, N.H. reported to one of her teachers at school that the defendant had raped her on the preceding Friday night. The defendant was subsequently arrested and charged by information with one count of sexual intercourse without consent and two counts of unlawful transactions with minors. The information was later amended to add an unrelated charge of sexual intercourse without consent.

A jury heard the trial in this matter September 5 through September 8, 1989. The jury found the defendant guilty of the original three charges and not guilty of the unrelated charge of sexual intercourse without consent. The District Court sentenced the defendant to thirty years imprisonment, with ten years suspended. The defendant appeals only from his conviction of the offense of sexual intercourse without consent.

Is the evidence sufficient to support the jury's verdict of guilty?

The standard of review of the sufficiency of the evidence for a criminal conviction is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Brown (1989),

7

239 Mont. 453, 456, 781 P.2d 281, 284.

A person commits the offense of sexual intercourse without consent if that person (1) knowingly, (2) has sexual intercourse, (3) without consent, (4) with a person of the opposite sex. Section 45-5-503, MCA. Under § 45-5-501(2)(c), MCA, the victim is incapable of consenting to sexual intercourse if he or she is less than sixteen years old.

The defendant asserts that his conviction is based upon the testimony of the victim, N.H., whose testimony is wholly unsupported by the testimony of any other witness or by physical evidence. He argues that the victim's testimony is so inherently incredible that no rational trier of fact could find guilt beyond a reasonable doubt. We disagree.

The defendant, the victim, and several other witnesses testified to the events which occurred during the night of April 14-15, 1989. Portions of the witnesses' testimony supported the victim's testimony; other parts contradicted it and supported the defendant's testimony. Only the defendant and the victim were present in the small room during the time at issue. The weight of the evidence and the credibility of the witnesses is exclusively within the province of the trier of fact. When the evidence conflicts, the trier of fact determines which evidence shall prevail. State v. Lamping (1988), 231 Mont. 288, 293, 752 P.2d 742, 746; Brown, 239 Mont. at 457, 781 P.2d at 284.

The issue of sufficiency of the evidence in this case essentially boils down to the credibility of the evidence

8

establishing the sexual intercourse element of the offense. Contrary to the defendant's assertion, the victim's testimony concerning this element is not uncorroborated. At least two witnesses admitted to hearing the victim scream that she had been raped and believed she was talking about the defendant. Furthermore, even if we characterized the victim's testimony as uncorroborated, this Court has consistently held that a conviction of sexual intercourse without consent is sustainable based entirely on the uncorroborated testimony of the victim. Lamping, 231 Mont. at 293, 752 P.2d at 746; State v. Maxwell (1982), 198 Mont. 498, 503, 647 P.2d 348, 351; State v. Metcalf (1969), 153 Mont. 369, 378, 457 P.2d 453, 458.

Here the jury weighed the credibility of the conflicting testimony and chose to believe the victim's version of the incident. We hold that, based on the evidence presented at trial, a rational trier of fact could have found the defendant guilty of the offense of sexual intercourse without consent beyond a reasonable doubt.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

9

William E. Hunter

Justices