JUSTICE WEBER
delivered the Opinion of the Court.
Following jury trial in the Nineteenth Judicial District Court, Lincoln County, Montana, the defendant, William Kowalski (Kowalski) was convicted of two counts of felony incest in violation of *168 § 45-5-507, MCA, for sexual contact with his daughters M.K. and C.K. Kowalski appeals. We affirm.
The determinative issues are restated as follows.
1. Did the court err in ruling that if Kowalski introduced letters M.K. had written, then it would allow the State to disclose circumstances surrounding the communication?
2. Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach C. K. ’s testimony?
3. Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence on the issue of physical assault to impeach Bushfield’s testimony?
In April 1989, C.K moved from Missouri to Eureka, Montana to live with her father, William Kowalski, and her sister, M.K. M.K. and C.K. testified that after C.K. arrived, Kowalski would have the girls undress to their waist or place his hands under their clothing, and fondle their breasts. They further testified that Kowalski measured their breasts, recorded these measurements on a door frame in his bedroom, and commented on their shape and development. Additionally, Kowalski painted a star on C.K’s naked breast, and attempted to cast a mold of his daughters’ breasts with “plaster”.
The girls related this conduct to their brother Benjamin who came to Eureka in November 1989 to stay with M.K. and C.K. while Kowalski was in Belgium. After listening to the victims, observing them, and seeing the measurements on Kowalski’s door frame, Benjamin drove the victims to Missouri. There they reported Kowalski’s conduct to Missouri officials.
On February 7,1990, the State of Montana charged Kowalski with incest for repeated sexual contact with his daughters M.K. and C.K. from June 1989 through November 1989. M.K. and C.K. were 13 and 15 years old at the time. On July 11, 1990, pursuant to a plea agreement, Kowalski pled guilty to felony assault. The District Court accepted this plea on the condition that Kowalski complete a sex offender examination. Kowalski failed to complete the sex offender examination, thus the court allowed him to withdraw his guilty plea, and the case proceeded to trial. At trial Kowalski testified that he only measured the victims’ bustlines while they were fully clothed. Further, he stated that he painted a star on C.K’s breast as a joke, at the child’s insistence. Finally, Kowalski argued that the girls *169 fabricated the story of sexual touching in order to escape his physical and emotional abuse. Kowalski testified that due to post traumatic stress, he would often hit and yell at his children.
I
Did the court err in ruling that if Kowalski introduced letters M.K. had written, then it would allow the State to disclose circumstances surrounding the communication?
M.K testified at trial that she was afraid of Kowalski. In cross-examination, Kowalski attempted to impeach M.K’s claim of fear and undermine her credibility by introducing letters M.K. sent to Kowalski from Missouri. M.K. sent these letters after the defendant pled guilty to felony assault.
The court ruled that if Kowalski introduced these letters, he would open the door for the State to explore circumstances surrounding the communication. At the time M.K. wrote to Kowalski she was in Missouri and he was in Montana. He had pled guilty to felony assault based on his sexual contact with the victims and was awaiting sentencing. Thus Kowalski posed no threat to M.K. or C.K. at the time his daughter wrote the letters. As a result of this ruling, Kowalski withdrew his request to introduce the letters.
Kowalski contends the court violated Rule 410, M.R.Evid., by ruling that the introduction of M.K’s letters required full disclosure of the facts underlying Kowalski’s prior plea. Under Rule 410, evidence of guilty pleas, later withdrawn, and statements made during pleading are inadmissable in criminal trials except for impeachment purposes. Kowalski relies on State v. Hanson (1981), 194 Mont. 197, 204, 633 P.2d 1202, 1207, where this Court citing Commission Comments stated:
[Rule 410] allows an accused to offer to plead guilty ... or to withdraw such plea without either action being used against him in any subsequent trial. This is intended... to allow highly prejudicial evidence to be excluded under considerations that the reasons for offering to plead or withdrawing pleas of guilty... would not be understood by a jury and would almost preclude a fair trial.
Kowalski contends the court’s ruling denied him a fair trial by forcing him to choose between effectively cross-examining M.K. and exposing the jury to highly prejudicial statements made dinring pleading.
The State contends that the trial court’s ruling was proper. In United States v. Martinez (2nd Cir. 1985), 775 F.2d 31, 37, the court allowed the prosecution to introduce prejudicial evidence to *170 rehabilitate the credibility of a witness during re-direct. The court held:
... [I]t is well settled that a cross-examination attacking a witness’s credibility and character will open the door to redirect examination rehabilitating the witness. Evidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination “for the purpose of rebutting the false impression which resulted from ... cross examination.” [Citations omitted.]
We agree with the State and conclude that allowing evidence of guilty pleas under the Martinez analysis is consistent with Rule 410. Here, Kowalski intended to introduce the letters to impeach M.K. and attack her credibility. Had the court suppressed the circumstances surrounding the letters while allowing Kowalski to use the letters to impeach M.K., it would have misled the jury. We conclude the court properly ruled that if the letters were introduced, a full disclosure of the circumstances surrounding Kowalski’s guilty plea was necessary for the jury’s proper evaluation of the evidence.
We hold that the court correctly determined that if Kowalski impeached M.K. with letters she mailed to Kowalski, then the State could disclose the circumstances surrounding the guilty plea.
II
Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence on the issue of physical assault to impeach C.K’s testimony?
At trial, C.K. testified that she was afraid of Kowalski, but he never struck her. Further, C.K. denied telling anyone that Kowalski had struck her. Subsequently, Sarah Bushfield, a friend of C.K., and Detective Vessel, of the Jefferson County, Missouri Sheriff’s Department, both offered opinion testimony that C.K. was truthful, without objection on the part of the defendant.
On cross-examination, Bushfield was asked whether C.K. said that Kowalski had struck her. Bushfield responded “no.” At that point, Kowalski attempted to attack C.K’s credibility with a prior out of court statement Bushfield made to officers during the investigation. Bushfield previously told officers that Kowalski had struck C.K. in the ribs. The State objected to Kowalski using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.
Later, during cross-examination of Detective Vessel, Kowalski once again attempted to impeach C.K. on the issue of physical abuse. *171 Vessel was asked whether C.K. admitted being “hit” by Kowalski. The State again objected to Kowalski’s using extrinsic evidence to impeach C.K. on the collateral issue of physical abuse.
The court sustained both objections. It ruled that the issue of Kowalski’s physical abuse of the children was collateral to the issue of sexual abuse. Thus, Kowalski was improperly impeaching C.K. on a collateral issue. In each instance Kowalski submitted an offer of proof.
Admitting or refusing evidence lies within the sound discretion of the trial judge. State v. Rudolph (1989), 238 Mont. 135, 142, 777 P.2d 296, 301. Thus, the rulings of the District Court will be upheld unless Kowalski proves the court abused its discretion by refusing the testimony. Here we conclude the court did not abuse its discretion in excluding the contested testimony.
First, Kowalski contends the District Court should have admitted the extrinsic evidence to show C.K.’s bias and motive to fabricate the sexual assault. Here, the record reflects that the jury had overwhelming evidence from which to conclude that Kowalski physically abused his children. Kowalski testified that he slapped and yelled at the children. M.K. stated she was afraid of her father, and that he had hit her and C.K. Kowalski’s son, Benjamin, testified Kowalski hit and yelled at M.K., C.K. and himself. Benjamin’s wife Salina Echolt, testified Kowalski was violent with the children. Finally, although C.K. testified that her father did not hit her, she did testify that she was afraid of him and that he hit M.K
Given the amount of evidence indicating that Kowalski had previously ‘Tát” C.K, her testimony to the contrary is of little consequence. Clearly the jury had sufficient evidence to conclude that the girls had motive to fabricate the sexual fondling in order to escape the physical abuse. Accordingly, the court did not abuse its discretion in refusing to admit this testimony to show C.K’s bias and motive to fabricate.
Next, Kowalski contends that the testimony was properly admissible to attack C.K’s credibility. Here, under Rule 608(b), M.R.Evid., Kowalski is not allowed to introduce extrinsic evidence of specific instance of C.K’s conduct. Rule 608(b), M.R.Evid. states:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’ credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examinations of the witness ...
*172 Under Rule 608(b), Kowalski could, at the court’s discretion, introduce C.K’s prior statements in the course of cross-examination of C.K. in order to attack her credibility. Here, Kowalski chose to introduce these statements through other witnesses instead of during his cross-examination of C.K. Thus, under Rule 608(b), the court did not abuse its discretion in excluding Kowalski’s questioning of Bushfield and Vessel.
Next, Kowalski contends the court should have admitted the evidence under Rule 613(b), M.R. Evid., which allows extrinsic evidence of a witness’s prior inconsistent statement. The State contends these statements regarding physical abuse were collateral to the charge of incest and the court correctly prohibited Kowalski from using extrinsic evidence of prior inconsistent statements to impeach C.K. on this collateral issue.
The State and- the trial court improperly addressed the issue of collateral matters. As stated in Cooper v. Rosston (1988), 232 Mont. 186, 756 P.2d 1125, the rule limiting impeachment of witnesses on collateral matters was abolished in favor of a relevancy analysis under Rules 401 and 403, M.R.Evid. Citing Commission comments, Cooper stated:
The Commission believes that the limitation of impeachment by Rule 401, defining relevant evidence as including impeaching evidence, and Rule 403, allowing the court to exclude relevant evidence if its probative value is outweighed by prejudice, confusion, waste of time, will allow the same result to be reached through a more flexible means than currently used with the collateral matters rule. Therefore, Section 93-401-25, R.C.N. 1947 [superseded], (to the extent that it is concerned with collateral matters) and case law stating the collateral matters rule are abolished in favor of the relevancy approach. (Emphasis supplied.)
Cooper, 232 Mont. at 191, 756 P.2d 1128. While the District Court applied the collateral matters rule instead of using the relevancy analysis, it did not abuse its discretion in excluding this evidence under Rule 401, M.R. Evid.
Rule 401, M.R.Evid., defines relevant evidence as evidence which tends to make the existence of any fact at issue more or less probable and may include evidence relating to a witness’s credibility. Rule 403, M.R.Evid., excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
*173 In State v. Hammer (1988), 233 Mont. 101, 759 P.2d 979, this Court upheld the trial court’s decision to exclude credibility evidence using Rules 401 and 403, M.R.Evid. In that case, the defendant attempted to introduce evidence of an assault victim’s prior traffic offenses and misdemeanor possession charges. The Court held that: “the evidence in question does not tend to make any fact at issue in this action more or less probable than that fact would be without the evidence.” Rule 401, M.R.Evid. Hammer, 233 Mont. at 111, 759 P.2d at 985. While Hammer raised the issue of self-defense, the Court concluded this evidence failed to make the defendant’s assault more or less probable. Further, evidence of the victim’s criminal conduct did not reflect on the truthfulness of his testimony regarding the assault. Thus, although the nature of the victim’s prior crimes was not highly inflammatory, the probative value of the evidence did not exceed its prejudicial effect.
Similarly, in this case, we conclude that evidence of Kowalski striking C.K. fails to make it more or less probable that he had sexual contact with M.K. and C.K. Likewise, such evidence does not reflect on the credibility of C.K.’s testimony regarding the sexual contact. Thus we conclude the trial court did not abuse its discretion in excluding the evidence under a Rule 401, M.R.Evid., analysis.
In addition, while 16 years old at the time of trial, C.K. had a ’’borderline IQ“ and functioned at around an 11 or 12 year old level. This is an additional factor which the court could properly consider in exercising its discretion.
We hold that the District Court did not abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach C.K.
Ill
Did the court abuse its discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault, to impeach Bushfield’s testimony?
Finally, Kowalski contends Bushfield’s prior inconsistent statement regarding Kowalski striking C.K. in the ribs, was properly admissible to attack Bushfield’s credibility. As with the previous issue, we point out that evidence of Kowalski’s physical abuse of C.K. does not make it more or less probable that he sexually abused the victims. Kowalski failed to prove the court abused its discretion in excluding the evidence. Thus, we hold the court did not abuse its *174 discretion by prohibiting Kowalski from using extrinsic evidence, on the issue of physical assault to impeach Bushfield’s testimony.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON, HUNT and McDONOUGH concur.