No. 92-560

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

STEVEN L. LITTLE,

     Defendant and Appellant.

FILED

OCT 04 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Teresa McCann O'Connor; O'Connor & O'Connor,
Billings, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General, Patricia
J. Jordon, Ass't Attorney General, Helena, Montana

          Dennis J. Paxinos, Yellowstone County Attorney,
Marcia Good Sept and Dale R. Mrkich, Deputy County
Attorneys, Billings, Montana

Submitted on Briefs:   August 19, 1993

Decided:  October 4, 1993

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Steven L. Little appeals from pre-trial and evidentiary rulings and a jury verdict entered in the Thirteenth Judicial District Court, Yellowstone County, finding him guilty of three counts of sexual intercourse without consent and one count of sexual assault. We affirm.

We restate the issues on appeal as follows:

1) Did the District Court err in denying Little's "investigatory" motions?

2) Did the District Court err in denying Little's motions to dismiss the information?

3) Did the District Court err in admitting evidence of other crimes, wrongs or acts?

4) Did the District Court err in excluding evidence regarding the "motorcycle incident?"

5) Did the District Court err in refusing to admit two photographs of the scene of the Flathead Lake incident?

6) Is the evidence sufficient to support the jury's verdict?

On August 7, 1991, an information was filed against Steve Little (Little) alleging three counts of sexual intercourse without consent in violation of § 45-5-503, MCA, and one count of sexual assault in violation of § 45-5-502, MCA. The first two counts alleged that in 1987-88, Little knowingly had sexual intercourse without consent with D.H. (older victim). Count Three alleged that on or about 1990, Little had sexual intercourse without consent with D.H. (younger victim), while Count Four alleged that Little

2

knowingly had subjected the younger victim to sexual contact without her consent. The victims were Little's stepdaughters. Little was subsequently arrested and released on bond.

On November 21 and 22, 1991, Little filed numerous motions, including three motions to dismiss the information, motions to compel medical and psychological evaluations on the victims, a motion for additional discovery of the Department of Family Services' (DFS) files regarding the victims, a motion for disclosure of the victims' counselor's notes, and a motion for a polygraph examination of the older victim. He asserted that the motions were necessary to remedy the State's lack of investigation of the charges against him.

In response to one of Little's motions to dismiss, the State was granted leave to file an amended information, which detailed two specific acts of sexual intercourse without consent involving the older victim and one specific act of both sexual intercourse without consent and sexual assault involving the younger victim. Little then moved to dismiss the amended information.

The District Court denied Little's motions regarding the psychological, medical and polygraph examinations, counseling notes and DFS files on February 25, 1992. On that date, the court also denied Little's motions to dismiss the information. One week prior to trial, the State submitted notice of its intent to introduce evidence of "other crimes" and alleged that, in Flathead County, Little had attempted sexual intercourse with the older victim and had performed oral sex on the older victim without her consent.

3

After a three-day trial, the jury found Little guilty on all four counts. On August 26, 1992, the District Court sentenced Little to terms of imprisonment totalling forty-five consecutive years, with ten years suspended. Little appeals.

Did the District Court err in denying Little's "investigatory" motions?

As stated above, Little filed several motions in support of his general allegation that the State had not sufficiently investigated the victims' allegations. On appeal, Little again broadly asserts that the State did not sufficiently investigate the allegations made against him; he urges this Court to require prosecutors and law enforcement to "search for and weigh pieces of information which tend to show innocence as well as those which tend to show guilt." He cites no authority for imposing this requirement as a matter of law nor does he identify the bases for his assertions. In the interest of clarity, we examine Little's arguments regarding his various "investigatory" motions in turn.

DEPARTMENT OF FAMILY SERVICES FILES

Little argued that he should be allowed discovery of the victims' files held by DFS or, at a minimum, the files should be inspected in camera by the District Court. The State informed the District Court that it knew of no relevant information contained in the DFS files. The District Court denied Little's requests.

On June 23, 1993, this Court issued an interlocutory appellate order requiring the District Court to conduct an in camera inspection of the victims' DFS files and enter appropriate findings

4

regarding whether the files contained information relevant to Little's prosecution. We relied on § 41-3-205, MCA, which provides that DFS records may be disclosed to a court for an _in camera_ inspection if relevant to an issue before it. We concluded that an actual _in camera_ inspection of the DFS files was necessary to complete the record on appeal. On August 6, 1993, the District Court entered an order stating that it had inspected the victims' DFS files and concluded that they contained no disclosable information. The court forwarded the DFS files to us with its order.

If a district court makes an _in camera_ review of confidential records and concludes that no material information is contained therein (and that conclusion is subject to review on appeal), the defendant's interest in ensuring a fair trial is protected. See State v. Thiel (1989), 236 Mont. 63, 67, 768 P.2d 343, 345. In Thiel, we quoted with approval the United States Supreme Court's explanation of the policy underlying this principle:

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the . . . records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.

Thiel, 768 P.2d at 345, quoting Pennsylvania v. Ritchie (1987), 480 U.S. 39, 60-61, 107 S.Ct. 989, 1003-4, 94 L.Ed.2d 40, 59.

We have reviewed the DFS files and conclude that the District Court properly determined that Little was not entitled to their disclosure. See also State v. Goodwin (1991), 249 Mont. 1, 20-21,

5

813 P.2d 953, 965.  We conclude that the District Court did not err in denying Little's motion to compel disclosure of the victims' DFS files.

COUNSELOR'S NOTES

Little also requested discovery of the victims' counselor's notes, arguing that they might contain exculpatory evidence.  The District Court denied the motion, concluding that Little was not entitled to discovery of the counselor's notes because the State did not have possession of the notes and did not intend to call the counselor as a witness.   Little then subpoenaed the counselor as a witness at trial and, at that point, requested an in camera inspection of the notes by the District Court.  The District Court declined to inspect the notes in camera.  The counselor testified, in essence, that the notes contained no exculpatory evidence and that she had no information indicating that the girls had fabricated their allegations against Little.

No statutory authority permits or requires a district court to make an in camera inspection of a counselor's notes and Little cites no other authority requiring disclosure or in camera inspection of the counselor's notes.  In State v. Rhyne (1992), 253 Mont. 513, 524, 833 P.2d 1112, 1119, we held that it was not error for a district court to refuse to examine or turn over counselor's notes if the counselor was not a witness against the defendant and the counselor's opinions were not used by the prosecution in preparing the case.

Here, the State did not call the counselor as a witness

6

against Little and did not rely on the counselor's notes or opinions in preparing the case. Indeed, the prosecutor indicated that the State had not viewed the counselor's files prior to the trial. We conclude that the District Court did not err in refusing to disclose the victims' counselor's notes to Little or in refusing to conduct an <u>in camera</u> inspection of the notes at trial.

## PSYCHOLOGICAL EXAMINATIONS

Little argues that he should be allowed to require the victims to submit to a psychiatric examination. It is well-established that a defendant cannot force a child victim of a sexual crime to undergo a psychological evaluation. State v. Crist (1992), 253 Mont. 442, 447, 833 P.2d 1052, 1056; State v. Gilpin (1986), 232 Mont. 56, 67, 756 P.2d 445, 451. Rule 35(a), M.R.Civ.P., allows for a mental or physical examination by a physician only when the mental or physical condition of a party is in controversy. State v. Liddel (1984), 211 Mont. 180, 191, 685 P.2d 918, 924. As was the case in <u>Crist</u>, <u>Gilpin</u>, and <u>Liddel</u>, the victims are witnesses, not parties, to this action.

Little concedes that this Court has held that a defendant cannot compel the psychiatric examination of a victim of a sexual crime. Instead, he argues that the reasoning of State v. Malee, an unpublished opinion and order issued by this Court in 1988, is more applicable to his situation. We do not recognize citations to unpublished opinions.

## MEDICAL EXAMINATIONS

Little also moved for production of medical reports or for an

7

order compelling the victims to undergo a medical examination. The District Court denied this motion based primarily on the State's assertion that it had no medical records to disclose.

For the same reasons that underlie our conclusion regarding the psychological examination, we conclude that a defendant cannot compel a child victim of a sexual offense to undergo an independent medical examination. Goodwin, 813 P.2d at 964. The victims are witnesses, not parties. As we have repeatedly admonished, to hold otherwise would permit the defense to try the victim of the crime and divert the jury's attention from the primary issue--the guilt or innocence of the defendant. Goodwin, 813 P.2d at 964.

Did the District Court err in denying Little's motions to dismiss the information?

Little made four motions to dismiss the information filed against him, all of which were withdrawn by Little or denied by the District Court. On appeal, he asserts three separate and independent grounds to support his argument that the information should have been dismissed: (1) the information was not supported by probable cause; (2) the information was not specific regarding the dates of the offenses; and (3) the information was not specific enough to protect him from double jeopardy. We examine each contention in turn.

PROBABLE CAUSE

Section 46-11-201, MCA, which sets forth the statutory requirements for obtaining leave to file an information, provides in pertinent part:

8

(2) An application must be by affidavit supported by evidence that the judge . . . may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge . . . shall grant leave to file the information, otherwise the application is denied.

Little argues that the affidavit filed in support of the information was insufficient because the victims' allegations were not corroborated. He also contends that, taken as a whole, the entire investigative file did not contain sufficient information to support a probability that he had committed the offenses charged.

An affidavit filed in support of a motion for leave to file an information need only recite facts sufficient to indicate a probability that the defendant committed an offense; it need not demonstrate a prima facie case. State v. Ramstead (1990), 243 Mont. 162, 166, 793 P.2d 802, 804. An information is intended to provide the defendant with notice, not to provide discovery of the State's evidence. State v. Riley (1982), 199 Mont. 413, 421, 649 P.2d 1273, 1277. Further, a court reviewing an affidavit for probable cause may use common sense and draw permissible inferences; the standards are less stringent than those governing the admissibility of evidence. State v. Miner (1976), 169 Mont. 260, 264, 546 P.2d 252, 255. This probable cause determination will not be reversed absent an abuse of discretion. State v. Buckingham (1989), 240 Mont. 252, 256, 783 P.2d 1331, 1334.

With those standards in mind, we review the affidavit filed in support of the motion for leave to file the information in this case. The crime of sexual intercourse without consent requires that the defendant knowingly had sexual intercourse without consent

9

with another person. Section 46-5-503, MCA. A victim is incapable of consent if she is less than 16 years old. Section 45-5-501(b)(iii), MCA.

Here, the affidavit related that the older victim stated that Little had sexual contact with her beginning in 1987, when she was 15 years old. The sexual contact originally consisted of kissing and fondling but progressed to the insertion of Little's fingers into her vagina and forced oral intercourse. The affidavit also alleged that the younger victim, who was 11 years old at the time, had stated that Little had inserted his fingers into her vagina. Thus, the affidavit sufficiently indicated a probability that Little had committed the three counts of sexual intercourse without consent.

The affidavit also satisfied the probable cause requirement for the count of sexual assault by alleging that, beginning in early 1990, Little had fondled the younger victim's breasts and vaginal area and had forced her to fondle his penis. See § 45-5-502, MCA. Lastly, the standards for probable cause with regard to filing an information do not require corroboration of the victims' allegations; the affidavit filed was sufficient to indicate a probability that Little committed the charged offenses.

We conclude that the District Court did not abuse its discretion in denying Little's motion to dismiss the information for lack of probable cause.

LACK OF SPECIFICITY OF DATE

The amended information alleged that "on or about 1987-88,"

10

Little had committed sexual intercourse without consent against the older victim (Counts I and II) and "on or about 1990," Little had committed sexual intercourse without consent and sexual assault against the younger victim (Counts III and IV). Little argues that the information is deficient because the dates of the offenses are not alleged with sufficient particularity to allow him to meaningfully assert the defense of alibi.

The law does not require that the time and place in an information be stated with impossible precision. Riley, 649 P.2d at 1277. Section 46-11-401(1)(c)(iv), MCA, requires that the information "charge the commission of an offense by . . . stating the time and place of the offense as definitely as can be done." (emphasis added.) In cases of sexual abuse against children, this Court has declined to impose exacting standards for identifying the dates of the offenses contained in the charging document even where the defense of alibi is asserted. See State v. Clark (1984), 209 Mont. 473, 481-83, 682 P.2d 1339, 1343-45; State v. D.B.S. (1985), 216 Mont. 234, 239-40, 700 P.2d 630, 633-35; and State v. Shaver (1988), 233 Mont. 438, 445-46, 760 P.2d 1230, 1235. In determining whether the dates are alleged with sufficient particularity in these situations, we review whether 1) time is a material ingredient in the offense, and 2) whether a continuing course of conduct is alleged. Clark, 682 P.2d at 1344.

In D.B.S., the information alleged that the defendant had committed a single act of incest sometime during a ten-month period. D.B.S., 700 P.2d at 633. In applying the first element

11

from Clark, we concluded that time was not a material ingredient in the offense of incest, even though the defendant had asserted the defense of alibi. D.B.S., 700 P.2d at 634. Regarding the second element, we stated that when a continuing course of conduct is alleged, further specificity in the information is not required. Even if a continuing course of conduct is not alleged, and a single act of incest is charged over a period of time, the information is not automatically insufficient. D.B.S., 700 P.2d at 634. After surveying the law in other jurisdictions, we concluded in D.B.S. that, because children are less likely to distinguish dates and times with specificity, the fact that the victim cannot set a date for the crime should not be fatal to the State's case. To hold otherwise would leave the defendant virtually immune from prosecution. D.B.S., 700 P.2d at 634.

The same reasoning applies here. Little's assertion of the defense of alibi does not make time a material ingredient to the crime of sexual intercourse without consent or sexual assault. See Shaver, 760 P.2d at 1234-35. It is clear, and Little does not challenge, that the time during which the specific acts are alleged to have occurred was when both victims were under the age of sixteen. Thus, he asserts no challenge that relates to time as a material element of the offenses.

We also conclude that the time frame alleged in the information is sufficiently particular under these circumstances. Although the State's amended information alleged four specific criminal acts instead of a continuing course of conduct, the

12

statements taken from both victims indicate that the defendant repeatedly subjected the children to sexual acts. We do not hold abused children to a standard requiring them to comprehend and remember specific times and dates. Shaver, 760 P.2d at 1235.

Little attempts to distinguish D.B.S. on the grounds that the victim in that case was four years old, and argues that the leniency afforded to such a young child should not be granted to these victims, who were 15 and 11 at the time of the criminal acts. We have previously rejected a similar argument with regard to a twelve-year-old victim, stating that, even though the victim was older than the child in D.B.S., the rationale of D.B.S. was still instructive. Shaver, 760 P.2d at 1235.

We conclude that the information alleged the dates of the offenses with sufficient particularity to inform Little of the general time period in which the offenses occurred. See Shaver, 760 P.2d at 1235.

DOUBLE JEOPARDY

Little's final argument regarding the sufficiency of the information is that Counts I and II "charge the same statute," and that Counts III and IV alleged the same course of conduct. He contends, therefore, that the information violates the statutory and constitutional prohibitions against double jeopardy. He concedes that this alleged double jeopardy violation was cured by the time the trial began, but argues that his ability to prepare his defense was hindered by the confusion caused by the information.

13

We find no merit to this argument. The facts constituting Count I in the Amended Information read:

> That the Defendant, STEVE LITTLE, DOB 12-24-47, knowingly had sexual intercourse without consent with D.H., DOB 10-6-72, when she was less than 16 and he was three or more years older, when he inserted his fingers into her vagina . . .

The facts constituting Count II read:

> That the Defendant, STEVE LITTLE, DOB 12-24-47, knowing had sexual intercourse without consent with D.H., DOB 10-6-72, when she was less than 16 and he was three or more years older, when he would insert his penis into her mouth . . .

The facts constituting Count III of the amended information detail digital penetration against the younger victim, in language similar to that of Count I. Count IV sets forth the facts constituting sexual assault, which are:

> That the Defendant, STEVE LITTLE, DOB 12-24-47, knowingly subjected D.H., DOB 11-4-79, to sexual contact without her consent, when she was less than 16 and he was three or more years older, when he fondled her breasts and vaginal area and forced her to fondle his penis . . .

The information clearly sets forth four specific and distinct sexual acts which occurred during a specified time period. It is elementary that separate acts can be charged in an information as separate offenses. See § 46-11-404 and -410, MCA; State v. Boe (1963), 143 Mont. 141, 145, 388 P.2d 372, 375; State v. Sanderson (1985), 214 Mont. 437, 451, 692 P.2d 479, 487. No double jeopardy violation occurred here.

We hold that the District Court did not err in denying Little's motions to dismiss the information.

14

Did the District Court err in admitting evidence of other crimes, wrongs or acts?

In the older victim's initial statement made July 15, 1991, she referred to an incident in Flathead County where Little had attempted sexual intercourse with her in the family camper while the rest of the family was at the waterslides. She also related an incident where, while picking cherries near Flathead Lake, Little sat her on a stump in the orchard and placed a cherry in her vagina with his tongue. On April 1, 1992, three weeks prior to trial, defense counsel interviewed the older victim and she again related the incidents in Flathead County.

On April 13, 1992, seven days before the trial began, the State filed notice of its intent to use evidence of other crimes, wrongs or acts, as required by State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The Just notice specified that:

> 1) During the offense period, the defendant forced sexual intercourse without consent upon victim D.H. DOB 10-6-72 [the older victim] during a family vacation to Flathead Lake, Montana. During the vacation, defendant forced oral intercourse upon victim and and [sic] he attempted to force sexual intercourse upon her. The attempted sexual intercourse occurred in Flathead County, Montana and the forced oral intercourse occurred in either Lake County or Flathead County, Montana.
>
> The Defendant's attorney learned of these allegations through D.H.'s original statement in the police investigative file. The attorney again heard the allegations from D.H. during her recorded interview which was taken on April 1, 1992.
>
> The foregoing evidence is relevant to establish the plan which the defendant had established for the sexual abuse of D.H. and a lack of mistake or accident that the defendant's actions constituted sexual intercourse without consent.

The District Court admitted the evidence over Little's objections.

15

On appeal, Little argues that the one-week notice was not timely and that the acts described in the notice were not sufficiently similar to the crimes charged. In reviewing evidentiary rulings, this Court will not overturn the district court's determination absent an abuse of discretion. State v. Hage (Mont. 1993), 853 P.2d 1251, 1253, 50 St.Rep. 631, 632.

We have developed extensive procedural and substantive requirements that govern the admission of evidence of other crimes, wrongs or acts in a criminal case. Procedurally, evidence of other crimes may not be received unless there has been written notice to the defendant that such evidence is to be introduced. State v. Howell (1992), 254 Mont. 438, 443, 839 P.2d 87, 90; Gilpin, 756 P.2d at 450. In Gilpin, on the day before trial, the State gave notice of its intent to introduce evidence of prior sexual assaults on a child victim. We determined that the notice must be given before the case is called for trial and, therefore, notice given on the day before trial began was timely. Gilpin, 756 P.2d at 450. Applied to this case, the State's one-week notice is sufficient.

Little argues that the State's notice was deficient under State v. Croteau (1991), 248 Mont. 403, 812 P.2d 1251. Croteau lends no support to Little's argument. In Croteau, the Just notice, given one year before trial, stated that the defendant fondled victim R.B. in Wyoming in 1982 and in Mexico in 1985. Croteau, 812 P.2d at 1252. While testifying, victim R.B. stated that the defendant had fondled him while he spent the night at the defendant's house; the defense objected that this evidence of a

16

"prior act," which was neither charged nor included in the Just notice, was improperly admitted. Croteau, 812 P.2d at 1253.

In response, the State asserted that the lack of Just notice was cured when it delivered, on the morning of the trial, a copy of a new statement by victim R.B. in which the incident at the defendant's house was described. Croteau, 812 P.2d at 1253. We disagreed, concluding that the last minute delivery of victim R.B.'s statement violated the notice requirements of Just. Croteau, 812 P.2d at 1254.

Unlike the defendant in Croteau, Little has been aware of the details of the allegations concerning the Flathead incidents since the outset of the case. As we stated in Croteau, the purpose of the notice requirement is to allow the defendant a reasonable opportunity to prepare to meet the evidence against him. Croteau, 812 P.2d at 1254. Here, Little had ample knowledge of the allegations and sufficient opportunity to respond to the evidence. We conclude that the State's Just notice was timely.

Little also argues that the admission of the evidence of the other crimes, wrongs or acts violates the substantive requirements of Just because the other crimes, wrongs or acts are not similar to those alleged in the information. To admit evidence of other crimes, wrongs or acts, the "Modified Just Rule" requires:

> 1) the other crimes, wrongs or acts must be similar;
> 2) the other crimes, wrongs or acts must not be remote in time;
> 3) the evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

17

knowledge, identity or absence of accident or mistake; and

4) although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time or needless presentation of cumulative evidence.

State v. Matt (1991), 249 Mont. 136, 142, 814 P.2d 52, 56.

Regarding the first element, it is not necessary that the prior act and the charged offense be identical. Gilpin, 756 P.2d at 449; Crist, 833 P.2d at 1054. In State v. Medina (1990), 245 Mont. 25, 31-32, 798 P.2d 1032, 1035-36, we concluded that a prior act of attempted sexual intercourse was sufficiently similar to the charged acts of fondling and forced oral sex against the same victim.

Here, both the other acts evidence introduced at trial and the acts charged involved the same victim. The defendant's actions during each incident and the charged offenses were basically the same: the defendant waited until he and the victim were alone and attempted or completed some form of sexual intercourse without consent toward his stepdaughter. See State v. McKnight (1991), 250 Mont. 457, 462-63, 820 P.2d 1279, 1282. We conclude that the acts in Flathead County were sufficiently similar to the charged offenses. Little does not challenge the existence of the other three substantive requirements of the Modified Just Rule.

We hold that the District Court did not abuse its discretion in admitting evidence of other acts, wrongs or crimes.

Did the District Court err in excluding evidence regarding the "motorcycle incident?"

18

On appeal, Little argues that the court improperly denied him the right to impeach the credibility of the older victim by "excluding evidence" regarding an incident that the older victim had described in a pre-trial interview with defense counsel concerning an alleged sexual assault on a motorcycle in Yellowstone County. Little's argument is misplaced.

It is well-established that admitting or refusing evidence lies within the sound discretion of the trial judge. State v. Kowalski (1992), 252 Mont. 166, 171, 827 P.2d 1253, 1256. We will not hold a trial court in error for a procedure in which a party acquiesced at trial. In re Marriage of West (1988), 233 Mont. 47, 51, 758 P.2d 282, 285. For similar reasons, we will not hold a district court in error for a procedure that did not occur.

During the older victim's cross-examination, defense counsel did not question, or attempt to question, her regarding the motorcycle incident. The court did sustain the State's objection to defense counsel's general question concerning the victim's truthfulness on the basis that the question was outside the scope of direct examination. That ruling, however, did not relieve the defense of its obligation to at least attempt to question the victim about the motorcycle incident so that a record would be available for review. Absent such a record, we have no basis for concluding that the court wrongfully "excluded" this evidence.

Additionally, Little argues that he was prohibited from recalling the older victim as a witness and from introducing independent evidence about the motorcycle incident. This argument

19

fails for two reasons. First, notwithstanding the court's suggestion during the older victim's cross-examination that Little could call the witness in his case-in-chief, Little did not do so. The record contains no ruling by the District Court that prohibited Little from recalling the older victim as a witness.

Second, three days prior to trial, Little submitted a motion in limine seeking to limit the State from referring to any acts alleged to have been committed by the defendant other than the specific four offenses charged and those covered by the Just notice. While no specific ruling appears of record, the District Court appears to have granted the motion, at least tacitly; throughout the proceedings, the court consistently limited the State's evidence to the four charged acts and the two acts described in the Just notice. When Little's counsel announced her intention to introduce independent evidence that would prove that the motorcycle incident could not have occurred as the victim described in her interview, the District Court ruled that such evidence would be excluded.

Because of Little's successful motion in limine, the older victim did not, and could not, testify on direct examination regarding the motorcycle incident. As discussed above, Little did not attempt to cross-examine the older victim concerning the motorcycle incident. Nor did Little call the older victim as a witness in his case-in-chief. Without testimony regarding the motorcycle incident in the record, it would be improper for the defense to introduce evidence from an independent witness as to

20

whether that incident could have occurred. Little seeks the best of both worlds: he argues that the State cannot introduce evidence of his other sexual acts towards the victim because it would be unduly prejudicial; yet, when it suits his purpose, he urges this Court to ascribe error to the District Court for refusing to allow him to question the older victim regarding the "other act," and for refusing to allow him to introduce independent evidence concerning this "other act."

We hold that the District Court did not abuse its discretion in refusing to admit evidence of the "motorcycle incident."

Did the District Court err in refusing to admit two photographs of the scene of the Flathead Lake incident?

During Little's testimony, he attempted to introduce three photographs which depicted the cherry orchard near Flathead Lake where the incident of oral intercourse was alleged to have taken place. The District Court refused to admit two of the photographs on relevancy grounds. Little argues that he intended to introduce the photographs to demonstrate that there was no stump in the orchard and that the incident could not have happened as the older victim described.

As stated earlier, the trial court has wide discretion in admitting or refusing evidence. Kowalski, 827 P.2d at 1256. The two excluded photographs depict fairly close-up pictures of cherry trees, which, as conceded by Little's counsel, do not exclude the possibility of a stump in the orchard. As the District Court observed, only the photograph admitted into evidence depicts the

21

road and orchard in such a way that Little could demonstrate the absence of the stump. Therefore, the relevance of the other excluded photographs is minimal. We cannot conclude that the District Court's evidentiary ruling constituted an abuse of discretion.

Is the evidence sufficient to support the jury's verdict?

In reviewing a jury verdict in a criminal case, the proper inquiry is whether, after the viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Whitcher (1991), 248 Mont. 183, 187, 810 P.2d 751, 753. Like the defendant in Whitcher, Little argues that the jury verdict cannot stand because it is based on the uncorroborated testimony of the victims.

We have held repeatedly that convictions for sexual intercourse without consent and sexual assault are sustainable based entirely on the uncorroborated testimony of the victim. Whitcher, 810 P.2d at 754; Gilpin, 756 P.2d at 453; Howell, 839 P.2d at 93; State v. Maxwell (1982), 198 Mont. 498, 503, 647 P.2d 348, 351. Here, both victims testified that Little had performed various sexual acts upon them during the specified time periods, while they were under the age of 16. Further, Little's natural daughter confirmed that the younger victim had told her of Little's sexual acts.

22

We hold that, based upon the evidence presented at trial, a rational trier of fact could have found the defendant guilty of the offenses of sexual assault and sexual intercourse without consent beyond a reasonable doubt.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

23

October 4, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Teresa McCann O'Connor
O'Connor & O'Connor
208 North Broadway, Suite 412
Billings, MT 59101

Hon. Joseph P. Mazurek, Attorney General
Patricia J. Jordan, Assistant
215 N. Sanders, Justice Building
Helena, MT 59620

Dennis J. Paxinos
Yellowstone County Attorney
P. O. Box 35025
Billings, MT 59107

Marcia Sept
Deputy County Attorney
P. O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy